1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10
VITINA M. BURNS,

11
               Plaintiff,

12
    v.

13
CAROLYN W. COLVIN, Acting

14
Commissioner of the Social Security
Administration,

15
             Defendant.

16

CASE NO. 12-cv-05889 RBL

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

Noting Date: February 14, 2014

17
     This matter has been referred to United States Magistrate Judge J. Richard

18
Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19
4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261,

20
271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 17, 18, 19).

21
     After reviewing the record, the Court finds that the ALJ failed to evaluate properly

22
the medical evidence. He erroneously credited non-examining medical consultants'

23
opinions over the opinions of examining doctorswithout providing specific and legitimate

24

reasons for doing so. The ALJ found that the examining doctors failed to rely on clinical findings and findings following mental status examination, instead finding that they relied on plaintiff's subjective reports. These findings by the ALJ are not supported by substantial evidence in the record as a whole.

Therefore this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings, including re-evaluation of the medical evidence.

<u>BACKGROUND</u>

Plaintiff, VITINA M. BURNS, was born in 1954 and was 47 years old on the initial alleged date of disability onset of July 18, 2001 (*see* Tr. 152-65). At the administrative hearing, plaintiff amended her disability onset date to May 31, 2007 (Tr. 31, 62). In plaintiff's Opening Brief, plaintiff seeks to re-amend her alleged disability onset date to April 1, 2004 (*see* ECF No. 17, p. 2, fn. 2).

Plaintiff has a 12th grade education (Tr. 64). Plaintiff's longest employment, 1991-2001, was driving a truck and packing houses for a moving company. She was terminated from that job because of mistakes that plaintiff attributes to going through a divorce and lack of concentration (Tr. 67).

According to the ALJ, "[s]ince the amended alleged onset date of disability, May 31, 2007, the claimant has had the following severe impairments: sternal fracture, chronic obstructive pulmonary disorder, depressive disorder, anxiety disorder, and polysubstance dependence in remission (20 CFR 404.1520(c) and 416.920(c))" (Tr. 34).

At the time of the hearing, plaintiff was living in a camper trailer with her two cats (Tr. 65, 71).

<u>PROCEDURAL HISTORY</u>

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act on March 17, 2008 (*see* Tr. 152-165). The applications were denied initially and following reconsideration (Tr. 88-91). Plaintiff's requested hearing was held before Administrative Law Judge Verrell Dethloff ("the ALJ") on January 6, 2011 (*see* Tr. 59-87). On January 28, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to "the Social Security Act at any time through September 30, 2007, the date last insured," however that she became disabled on March 26, 2009 (Tr. 51; *see also* Tr. 31-53).

On August 3, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in October, 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on March 6, 2013 (*see* ECF Nos. 12, 13).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly assessed

plaintiff's residual functional capacity; and (4) Whether or not the ALJ erred by basing his step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations, and by improperly relying on the Medical-Vocational guidelines (*see* ECF No. 17, p. 1). Plaintiff contests only the ALJ's review of her mental impairments and mental residual functional capacity ("RFC"), not his review of her physical RFC (*see id.*, p. 3 n.3).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency")

(*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals,

legal errors committed by the ALJ may be considered harmless where the error is

irrelevant to the ultimate disability conclusion when considering the record as a whole.

*Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*,

556 U.S. 396, 407 (2009).

<u>DISCUSSION</u>

**(1)      Whether or not the ALJ properly evaluated the medical evidence.**

Plaintiff argues that the ALJ indicated that he was giving greater weight to the

non-examining medical consultants because they are "experts in Social Security

disability" without acknowledging that the opinions of examining doctors generally are

given greater weight than the opinion of those who do not examine plaintiff; failed to

discuss significant probative medical evidence; and failed to provide specific and

legitimate reasons for his failure to credit fully opinions from examining doctors,

committing harmful legal error (*see* Opening Brief, ECF No. 17, pp. 9-13; *see also* Tr.

44). Defendant argues that the ALJ properly relied on the opinion from the medical

consultant; provided specific and legitimate reasons for any failure to credit fully all of

the medical opinions from examining doctors; and, was not required to consider the

evidence plaintiff notes because it was not evidence relevant to the time period under

review in the ALJ's decision from the amended alleged disability onset date of May 31,

2007 through the January 28, 2011 date of the ALJ decision (*see* Response, ECF No. 18,

pp. 6-18).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

Before a discussion of the specific reasons provided by the ALJ for his failure to credit fully opinions from particular doctors, the Court makes the preliminary observation that the ALJ erred in his general discussion of medical opinions in general. In particular,

the ALJ indicates that he "assigned considerable weight to the opinions of Washington DDS physicians and psychologists in this matter in recognition of the fact that, unlike the other providers of opinions, the DDS sources are experts in Social Security disability" (Tr. 44 (*citing* 20 C.F.R. 404.1527(f)(2)(i))). Regardless of expertise in Social Security, the regulations and case law are clear that in general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. *Lester, supra*, 81 F.3d at 830 (*citing Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). According to the Ninth Circuit, "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinion of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (*citing Rodriguez v. Bowen*, 876 F.2d 759, 761-62 (9th Cir. 1989); *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

It likewise is clear that an examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you").

The ALJ's indication otherwise is contrary to the case law in this Circuit and contrary to federal regulations, and constitutes legal error.

a. Dr. Tawnya Christiansen, M.D., examining doctor (Tr. 325-29).

Dr. Christiansen examined and evaluated plaintiff on September 9, 2008 (*see* Tr. 325-29). She reviewed multiple records and evaluations, including a couple of notes from

Dr. Anjan Sattar, M.D.; two psychological evaluations from Dr. Keith Krueger, Ph.D.; a psychological evaluation from Dr. Trevelyan Houck, Ph.D; and, an initial assessment note dated April 20, 2005 from the Wholistic Psychology Clinic (*see* Tr. 325). When recording plaintiff's past medical history, Dr. Christiansen noted that plaintiff was "a somewhat disorganized historian" (*see id.*). Dr. Christiansen's notation of plaintiff's description of her family, social and environmental history includes the following:

> The claimant was born and raised in Texas. She states that her father was an alcoholic and divorced her mother when the claimant was only 1 year old. The claimant reports being the victim of physical abuse as a child and also [reports] sexual abuse perpetrated by her grandfather. She left home at the age of 13 and went to another town in Texas where she obtained a job on a fishing pier and shared an apartment with another girl. . . . . [Her first] marriage lasted five years, produced one son, and was violence-free. She divorced that husband and her second marriage began in 1984-85 and lasted until 2002. This is the marriage that apparently involved domestic violence.

(Tr. 326-27).

Dr. Christiansen completed a mental status examination (*see* Tr. 327-28). She observed that plaintiff's "eye contact is quite variable" and that plaintiff answered "some questions incompletely and rather concretely" (*see* Tr. 327). Dr. Christiansen assessed that plaintiff's content of thought was notable for "themes of guilt and worthlessness;" that plaintiff's mood was depressed and that her affect was "dysphoric and tearful" (*id.*).

Regarding her cognitive performance, plaintiff was able to repeat 4/5 digits forward, but could not repeat any of the digits [0/5] in reverse (*id.*). Similarly, plaintiff only was able to recall 1/3 objects after only a five minute delay, although her performance improved to 3/3 with clues (*id.*). Additionally, plaintiff either was unable to

understand Dr. Christiansen's instruction to count backwards, subtracting three at a time, or was unable to complete serial 3s calculations (*see id.*). Similarly demonstrating errors in concentration, plaintiff was able to spell world forward, but made two mistakes when attempting to spell the five-letter word in reverse (*see* Tr. 328). Dr. Christiansen assessed that plaintiff's concentration, persistence and pace were "fair" during her clinical interview and mental status examination ("MSE") (*see id.*).

Dr. Christiansen diagnosed plaintiff with major depressive disorder; anxiety disorder [NOS]; and polysubstance abuse verses dependence in reported remission, among other things (*id.*). Dr. Christiansen rated plaintiff global assessment of functioning ("GAF") at 50 (*id.*). Dr. Christiansen found it difficult to assess the degree to which plaintiff may or may not improve or recover, because of plaintiff's variable treatment (see Tr. 328-29). However, Dr. Christiansen nevertheless provided an opinion regarding plaintiff functional assessment at the time of her clinical interview, which included the following:

> I do not think that she could perform work activities on a consistent basis. This might improve somewhat with special or additional supervision.
>
> This claimant could not maintain regular attendance in the workplace, complete a normal workday or workweek without interruptions from a psychiatric condition, nor could she adequately deal with the usual stress encountered in competitive work.

(Tr. 329).

The ALJ failed to credit fully Dr. Christiansen's opinions (*see* Tr. 45-46). The ALJ included the following reasoning:

[Dr. Christiansen's] opinion is not consistent with the longitudinal record that repeatedly documents the claimant's ability to get along with peers as well as various mental health providers, or with her documented activities. Second, the record shows that the claimant consistently attended appointments and treatment. Finally, the limitations are not persuasive to the extent that they were based on the claimant's subjective reports, which are not entirely credible for the reasons discussed above.

(*id.*).

First, the Court finds that the ALJ failed to indicate which of plaintiff's particular activities he was relying on, and also, the ALJ failed to explain how plaintiff's "documented activities" were not consistent with the opinions from the examining doctor (*see* Tr. 45). The ALJ noted in his opinion various activities of plaintiff, such as that she can do household chores, shop for groceries, use public transportation; perform personal care tasks; go to the library about every two months; spend time with friends; go to a baseball game; babysit; and spend a couple of months in Texas caring for her ill mother (*see* Tr. 43), but did not explain how these activities negate Dr. Christiansen's opinion, for example, that plaintiff "could not maintain regular attendance in the workplace, complete a normal workday or workweek without interruptions from a psychiatric condition, nor could she adequately deal with the usual stress encountered in competitive work" (*see* Tr. 329). The "documented activities" do not necessarily demonstrate that plaintiff could maintain regular attendance, or complete a normal workday and workweek in a competitive work environment, nor do they demonstrate that plaintiff could deal adequately with the usual stress encountered in competitive work (*see* Tr. 43, 45, 329).

Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities  .  .  .  .  does not in any

way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

For the stated reasons and based on the relevant record, the Court concludes that the ALJ's finding that Dr. Christiansen's opinion is not consistent with the longitudinal record or with plaintiff's "documented activities" (*see* Tr. 45), is not a finding based on substantial evidence in the record as a whole. It does not comprise a specific and legitimate reason to discount the specific opinions from Dr. Christiansen regarding plaintiff's ability to perform work activities on a consistent basis in a competitive work environment (*see* Tr. 329).

Finally, the ALJ's finding that Dr. Christiansen based her opinions on plaintiff's subjective reports, as opposed to basing her medical opinion on her own clinical interview; her review of plaintiff's medical records; and her conduction of a mental status examination, is a finding not based on substantial evidence in the record as a whole.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination ("MSE") allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The MSE generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981)))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be

careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

Here, the ALJ indicated that Dr. Christiansen's opinion was discounted "to the extent that they were based on the claimant's subjective reports" (*see* Tr. 45-46). First, the Court notes that this is not sufficiently specific, and the Court is unable to determine which opinions by Dr. Christiansen that the ALJ found were based in part on plaintiff's subjective report. In addition, this reason by the ALJ is not legitimate, as it is contrary to Dr. Christiansen's explicit findings, which are based, in part, at least, on what is considered the objective portion of the examination – the MSE.

Regarding the ALJ's finding that Dr. Christiansen relied on plaintiff's subjective report, the Court notes that the first sentence of Dr. Christiansen's report indicates her assessment that plaintiff was "a somewhat disorganized historian" (*see* Tr. 325). Dr. Christiansen also indicated specifically that she had reviewed multiple doctors' evaluations and notes, including from Dr. Sattar, M.D.; Dr. Krueger, Ph.D.; Dr. Houck, Ph.D., and also from a psychology clinic in Kent, Washington (*see id.*). Finally, in addition to documenting her conduction of a clinical interview and a MSE (*see* Tr. 325-28), Dr. Christiansen noted the following regarding plaintiff's history with substances:

> [Plaintiff] tells me that she ceased drinking alcohol in 1996 [and] denies any drug use except for having tried marijuana once at the age of 19 and states that she thought it was gross [but] This is in stark contrast to notes from Cascade Mental Health of July 2004 and April 2008 wherein she admitted a history of methamphetamine use  .  .  .  .

(Tr. 327).

Based on a review of the relevant record, the Court concludes that Dr. Christiansen appears to have conducted a clinical interview, conducted a MSE, and most importantly, maintained a critical eye with respect to plaintiff's allegations (*see* Tr. 327). Therefore, for the stated reasons, and based on the relevant record, the Court concludes that the ALJ's finding that Dr. Christiansen relied on plaintiff's subjective self-report as opposed to her own clinical findings and observations and her review of plaintiff's medical record, is a finding not based on substantial evidence in the record as a whole. The Court also concludes that this reasoning does not entail a specific and legitimate reason for any failure to credit fully opinions from Dr. Christiansen.

For the stated reasons, the Court concludes that the ALJ erred in his review of the medical evidence. The Court also concludes that this error is not harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Court noted multiple instances of the application of these principles. *Id*. (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the

case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Here, Dr. Christiansen opined, among other things, that plaintiff "could not maintain regular attendance in the workplace, complete a normal workday or workweek without interruptions from a psychiatric condition, nor could she adequately deal with the usual stress encountered in competitive work" (*see* Tr. 329). Had these opinions been credited fully by the ALJ, plaintiff's residual functional capacity ("RFC") likely would have been different, affecting the ultimate determination regarding disability in this matter. Therefore, the ALJ's error herein is not harmless error and this matter should be reversed and remanded for further consideration of the medical evidence regarding plaintiff's mental impairments and limitations.

b. Dr. Keith Krueger, Ph.D

Dr. Krueger evaluated and examined plaintiff on two occasions, May 31, 2007 and March 20, 2008 (*see* Tr. 270-85). He conducted a MSE on both occasions, detailing the many tests conducted (*see* Tr. 274-75, 282-83). Similar to the rejected opinion of examining doctor, Dr. Christiansen, Dr. Krueger opined in May, 2007 that plaintiff suffered from marked limitation on her ability to respond appropriate to and tolerate the

pressures and expectations of a normal work setting (*see* Tr. 280). He indicated his opinion that plaintiff was chronically mentally ill (*see* Tr. 281).

On March 20, 2008, Dr. Krueger again evaluated plaintiff, again conducted a MSE and diagnosed plaintiff with major depression, recurrent with psychotic features; anxiety disorder NOS; and alcohol dependence, mostly in remission (*see* Tr. 271). Dr. Krueger again opined that plaintiff suffered from marked limitation on her ability to respond appropriate to and tolerate the pressures and expectations of a normal work setting (*see* Tr. 272). He indicated that she last worked in 2001, had few friends in the past, and had "only 1 or 2 now" (*see id.*). Dr. Krueger opined that plaintiff would suffer from marked limitation in this, and other social factors, for a year, and was chronically mentally ill (*see* Tr. 273).

The ALJ rejected Dr. Krueger's opinions because of the ALJ's finding that "Dr. Krueger failed to provide any mental status examination findings that would support the limitations assessed; rather, he merely recited the claimant's subjective reports, which are insufficient support" (*see* Tr. 46).

However, on May 31, 2007, Dr. Krueger conducted a MSE and observed plaintiff's tense posture, her pressured speech; her restless motor activity and her many tears (*see* Tr. 282). He indicated that her affect and mood were not within normal limits, but did not elaborate the basis for these ratings (*see id.*). Dr. Krueger tested plaintiff's ability to think abstractly, and rated her performance as fair on one, marginal on two, and poor on three individual questions (*see* Tr. 283). Dr. Krueger similarly questioned plaintiff to test her judgment and comprehension and assessed it as fair on one; marginal

on two; and poor on one question (*see id.*). Dr. Krueger assessed plaintiff's insight as marginal and her memory and concentration as fair (*see id.*). He conducted at least digit span testing (*see id.*).

Similarly, on March 20, 2008, Dr. Krueger noted plaintiff's tense posture and her restless motor activity, although he noted that she had "no tears today (a lot 5/07)" (*see* Tr. 274). He conducted detailed testing of plaintiff's ability for abstraction and assessed that it was "no better than 5/07" (*see* Tr. 275). Dr. Krueger also conducted detailed testing of plaintiff's memory and concentration, including recall of objects immediately, and after a five-minute delay; and digit span testing, forward and backward (*see id.*). He assessed that her memory and/or concentration was "better than 5/07" (*see id.*).

Therefore, the Court concludes based on a review of the relevant record that the ALJ's finding that "Dr. Krueger failed to provide any mental status examination findings that would support the limitations assessed; rather, he merely recited the claimant's subjective reports," is a finding that is not based on substantial evidence in the record as a whole (*see* Tr. 46).

The ALJ also rejected Dr. Krueger's opinions in part with a finding that Dr. Krueger's opinions were not "consistent with the record considered as a whole" (*see* Tr. 46). This finding is not specific (*see id.*).

Finally, the ALJ rejected the opinions from Dr. Krueger with a finding that "Dr. Krueger again listed the claimant's self reports regarding her symptoms and her past work experiences; however, the claimant's reports are not entirely credible" (*see id.*). Based on a review of the relevant record, the Court concludes that the record does not

demonstrate undue reliance by Dr. Krueger on plaintiff's self-reports, as he conducted detailed testing and recorded many independent observations based on his examination and clinical interviews with plaintiff on two occasions.

For the reasons stated, and based on the relevant record, the Court concludes that the ALJ erred also in his review of the medical opinion evidence offered by Dr. Krueger. Dr. Kruger opined marked limitations on plaintiff's ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, similar to the opinion from Dr. Christiansen discussed above, *see supra*, section 1.a. Similarly, the error here is not harmless, providing an additional reason that this matter should be reversed and remanded for further consideration.

c. Dr. Anjan Sattar, M.D.

Almost three years prior to the amended alleged onset date of May 31, 2007 relevant to the ALJ's written decision subject to this Court's review, (but subsequent to plaintiff's re-amended alleged onset date of April 1, 2004), Dr. Sattar evaluated plaintiff in July, 2004, at which time she denied "any problems with drugs" (*see* Tr. 235). He conducted a MSE, noted that plaintiff initially spoke with a decreased rate, but opened up subsequently, and "was frank about her symptoms" (*see* Tr. 236). He assessed that plaintiff's affect was "stable, blunted and showed a wide range of emotions" (*id.*). Dr. Sattar did not note specific cognitive testing, such as memory recall immediately and after a five-minute delay, or Serial 3s and Serial 7s, but he opined that her cognition was "good" (*id.*).

Dr. Sattar diagnosed plaintiff with Major Depressive Disorder, Recurrent; Panic Disorder with Agoraphobia; and Hypothyroidism (*id.*). Dr. Sattar rated plaintiff's global assessment of functioning ("GAF") at 45 (*id.*). Dr. Sattar indicated that because plaintiff was "so depressed," that he started her "on Zoloft 25 mg [every morning] to be increased to 50 mg after seven days" (*id.*).

Dr. Sattar also evaluated plaintiff almost four years subsequent to this quoted intake evaluation, on April 7, 2008 (*see* Tr. 669-771). He detailed how plaintiff had "dropped out of treatment here as she moved to Kent," and how she "had completely denied any drug problems" previously, but that had "turned out to be untrue" (*see* Tr. 669). He concluded, however, that "her presentation otherwise seems to be similar and consistent, with mostly depression and anxiety spectrum symptoms" (*see* Tr. 670).

Dr. Sattar conducted a MSE and observed that plaintiff "was tearful occasionally otherwise she was pleasant in her interaction" (*id.*). Dr. Sattar again did not indicate in his treatment note which, if any, particular cognitive tests were performed; however, on this occasion, he opined that her cognition was "fair" (*id.*). Dr. Sattar rated plaintiff's GAF at 45 (*id.*).

The ALJ discussed some of Dr. Sattar's record, but excluded some of the information supporting plaintiff's allegations (*see* Tr. 40-43). Although all of Dr. Sattar's opinions and treatment records are relevant regardless of which particular alleged onset date is utilized, the level of significance and relevance of the opinions may depend in part on the ultimate alleged date of disability onset.

The Court already has concluded that the ALJ erred in his review of the medical evidence and has concluded that the medical evidence should be evaluated anew, *see supra*, sections 1.a, 1.b. Additionally, plaintiff has re-amended her alleged onset date in her Opening Brief before the Court, as noted previously, *see supra*, BACKGROUND. For these reasons, the Court concludes that the matter of plaintiff's alleged onset date of disability is a matter best determined following remand to the Acting Commissioner (*see* Response, ECF No. 18, pp. 6-10 (Court should deny plaintiff's "belated attempt to amend her alleged disability onset date before this Court two years after the ALJ's decision was issued," as plaintiff "cited to no authority that she can amend her alleged disability onset date in Court or that the Court has the authority to grant such an amendment")).

Although plaintiff requests remand of her claims for a new hearing, and is not requesting immediate award of benefits, (*see* Reply, ECF No. 19, p. 3), the Court should order only that the ALJ comply with Social Security Rulings and relevant federal regulations and consider all of the evidence in the case record of plaintiff. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). The Court should not order adoption of a particular alleged date of disability onset following remand, but notes that plaintiff has amended her alleged date of disability onset herein to April 1, 2004.

d.  Mr. Scott Amondson, B.A., CDP, other medical evidence

Because the Court has concluded that the medical evidence should be evaluated anew, the "other medical evidence" provided by Mr. Amondson also should be evaluated anew following remand of this matter. The ALJ should note the following:

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, therapists and chiropractors, who are considered other medical sources[1], *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e)).

However, "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources." *See* SSR 06-

---

[1] "Other sources" specifically delineated in the relevant federal regulations also include "educational personnel," *see* 20 C.F.R. § 404.1513(d)(2), and public and private "social welfare agency personnel," *see* 20 C.F.R. § 404.1513(d)(3).

03p, 2006 SSR LEXIS 5 at *3-*4 (internal citations omitted). Nevertheless, evidence from "other medical" sources, that is, lay evidence, can demonstrate "the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* at *4. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *8. Therefore, according to the Social Security Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.*

Relevant factors when determining the weight to be given to another medical source include:

> How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source present relevant evidence to support an opinion; How well the source explains the opinion; Whether [or not] the source has a specialty or area of expertise related to the individuals' impairments(s), and Any other factors that tend to support or refute the opinion.

2006 SSR LEXIS 5 at *11. In addition, the fact "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" *Id.* at *12. However, "depending on the particular facts in a case, and after applying the

factors for weighing opinion evidence, an opinion from a medial source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at *12-*13.

**(2)    Whether or not the ALJ properly evaluated plaintiff's testimony.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, sections 1.a, 1.b. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

**(3)    Whether or not the ALJ properly assessed plaintiff's residual functional capacity; and Whether or not the ALJ erred by basing his step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations, and by improperly relying on the Medical-Vocational guidelines.**

Similarly, as the medical evidence and plaintiff's allegations and testimony shall be evaluated anew, plaintiff's RFC must be evaluated anew, as must the remaining steps of the sequential disability evaluation process, as necessary.

<u>CONCLUSION</u>

The ALJ committed harmful error in his review of the medical evidence and all of the medical evidence should be evaluated anew following remand of this matter. The ALJ should consider all evidence in plaintiff's case record. Because the Court has concluded that the medical evidence should be evaluated anew, the "other medical evidence"

provided by Mr. Amondson also should be evaluated anew following remand of this matter.

Because of errors in the evaluation of the medical evidence, plaintiff's testimony and allegations must be considered again anew following remand of this matter.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 14**,** 2014, as noted in the caption.

Dated this 21st day of January, 2014.

J. Richard Creatura
United States Magistrate Judge